## STROBE vs. DOWNER.

The first mortgagee, who is made a defendant to a suit for the foreclosure of a second mortgage without any allegation in the complaint *contesting* his title, has a right to assume that the proceeding is to be conducted upon the theory that his lien is paramount to that of the plaintiff.

A second mortgagee brought an action of foreclosure, making the first mortgagee a defendant under the general allegation only " that he had or claimed some interest in the mortgaged premises," and a judgment was rendered contain-

ing the usual clause barring the defendants of all their rights, &c., and the second mortgagee bought the mortgaged premises at the foreclosure sale and received the sheriff's deed therefor. The first mortgagee, at the time the foreclosure suit was brought, had assigned his mortgage, but the assignment was never recorded, and the second mortgagee had no notice of it at the time of the foreclosure sale : *Held*, that the rights of the first mortgagee, had he continued to hold his mortgage, would not have been cut off by the foreclosure and sale, and consequently the rights of his assignee were not cut off thereby.

June Term,
1860.

STROBE
v.
DOWNER.

APPEAL from the Circuit Court for *Washington* County. Action to foreclose a mortgage. The case is stated sufficiently in the opinion of the court. Judgment for the plaintiff against all the defendants, from which the defendant *Downer* appealed.

*Joshua La Due*, for appellant, contended that *Strobe*, not having given *Downer* notice, actual or constructive, of the assignment, had no rights as assignee, other than Weimar, the first mortgagee, would have had, if he had not assigned the mortgage; that if Weimar, after the assignment but before record thereof, had released of record the mortgage so assigned, and the mortgagor had conveyed the premises to an innocent party, who had put his deed on record before the assignment was recorded, such innocent purchaser would undoubtedly take the land clear of the mortgage; and that in this case, Weimar having been made a party to the suit, and having been barred, by the judgment, of all his rights in the premises, and the sheriff's deed, which was, by the statute, equivalent to quit-claim deeds from all the parties to the suit, having been recorded before the assignment, *Downer*, as the grantee in that deed, takes the property free of the mortgage. R. S. 1849, chap. 59, §§ 24, 29, 30; chap. 84, § 83; *Merrick vs. Post*, 15 Wend., 588; *Jackson vs. Chamberlain*, 8 id., 620.

*Frisby & Mann*, for respondent, contended that prior mortgagees are proper parties to a foreclosure suit only when the plaintiff therein seeks to *redeem* the land from their lien. *Eagle Fire Co. vs. Lent*, 6 Paige, 637; *Corning vs. Smith*, 2 Seld., 82; *Lewis vs. Smith*, 5 id., 502; *Walker vs. Bank of Mobile*, 6 Ala., 452; *Caldwell vs. Taggart*, 4 Peters, 190; *Haines vs. Beach*, 3 John. Ch. R., 459; *Jenkins vs. Cont. Ins.*

*Co.*, 12 How. Pr. R., 67 ; 1 Whittaker's Pr., 76, 416 ; 2 Monell's Pr., 216 ; 1 Hill. on Mort., 300 ; 2 id., 100.  2. Had *Strobe* been made a party to the foreclosure suit brought by *Downer*, under the general allegation that " he had, or claimed to have, some interest in or lien upon said mortgaged premises," while he would have had a right to set up his claim in that suit, his claim on the land would not have been barred by the judgment therein, if he had elected rather to bring a separate suit for the foreclosure of his mortgage. *Bedell vs. M'Clellan*, 11 How. Pr. R., 172, 174 ; *Halsey vs. Carter*, 1 Duer, 667 ; *Haire vs. Baker*, 1 Seld., 357 ; *Mechanics and Traders' Savings Institute vs. Roberts*, 1 Abb., 381; *Yates vs. Fassett*, 5 Denio, 31; 1 Whittaker's Pr., 76 ; Van Santvoord's Pl., 576, 578.  Our statute which declares that a deed executed to the purchaser at a foreclosure sale, shall be an *entire bar*, &c., relates only to the right of redemption of the mortgagor and of others whose interest is *subsequent* to the mortgage foreclosed.  R. S., 1849, chap. 84, § 83 ; *Lewis vs. Smith*, 5 Seld., 502.  3. *Strobe's* rights in this suit are not affected by the proceedings in the former suit of *Downer vs. Thullen*, to which he was not a party. 7 Wis., 321, 279 ; 2 id., 533–5 ; 3 John. Ch. R., 459 ; 2 Johns., 260–2 ; 1 Dana, 23–25 ; 2 C. & H.'s Notes, 918–9, 975 ; 2 Hill. on Mort., 110.  Nor is he bound as a privy in law or estate, having obtained his interest prior to judicial proceedings against his grantor.  2 Smith's L. C., 590, 686 ; 3 Abb., 297 ; 1 John. Ch. R., 566, 577.  4. *Downer*, having had notice, both constructive and actual, of the outstanding prior mortgage, took the premises subject thereto.  4 Wis., 16 ; 5 id., 443, 447 ; 7 id., 449 ; 15 N. Y. R., 354, 362 ; 15 Wend., 595–6 ; 10 John., 456, 460 ; 6 Hill, 469.

*By the Court*, PAINE, J.  The material facts of this case are as follows: Matthias Thullen and wife executed to Louis Weimar, the mortgage to foreclose which this suit is brought, on the 22d day of July, 1855, and it was recorded on the 26th of the same month.  Afterwards, in March, 1856, they executed a second mortgage upon the same premises, to Moses Weil, which was duly recorded, and was afterwards as-

June Term,
1860.

STROBE
v.
DOWNER,

signed to *Downer*, the appellant.    The first mortgage was
assigned to the plaintiff, but the assignment was never re-
corded.    It seems that when *Downer* took the assignment of
the second mortgage, he supposed there was no prior incum-
brance on the premises, but he afterwards learned of the ex-
istence of the first, and he then commenced a suit to fore-
close his own mortgage, making Louis Weimar, the first
mortgagee, a party, not knowing of the assignment of that
mortgage to the plaintiff.    Weimar did not appear, and a
judgment of foreclosure and sale was entered, with the usual
clause barring the defendants and those claiming under them,
of all right, title, interest and equity of redemption, &c.    A
sale took place, at which *Downer* was the purchaser.    He
also testified that at the time he purchased, he supposed, up-
on the authority of some information he had received, that
the first mortgage had been paid.    He now relies on these
facts as a bar to this action, which is brought by the plaintiff
as assignee to foreclose the first mortgage.    It seems to us
very clear that unless the decree and sale in the suit upon
the second mortgage, had the effect of absolutely cutting off
all rights under the first, there is nothing else appearing in
the case which should have that effect.    The fact that *Downer*
may have supposed that the first mortgage was paid, what-
ever influence it might have had on an application by him
to be relieved from his purchase, could certainly have no in-
fluence upon the rights of the owner of that mortgage.    It
was duly recorded, which was notice to all the world of its
existence.    Besides this, *Downer* had actual notice of it, and
was notified by the mortgagor himself that it had not been
paid.    If after this he chose to rely on the information of
others, that it had been paid, he must be held to have done
it at his peril.    It ought not to have the slightest effect upon
the rights of the holders of that mortgage.    The case turns
then entirely upon the effect of the decree and sale.    And
this might present two questions.    First, what would have
been the effect upon the rights of Weimar, the first mortga-
gee, who was made a party to the suit, provided he had still
owned the mortgage?    And second, if his rights would have
been cut off, would the plaintiff, as assignee, but whose as-

signment had not been recorded, and of which the purchaser had no notice, stand in any better position?

The conclusion to which we have come upon the first question, makes it unnecessary for us to determine the second. Though if the first should be answered in the affirmative, and it should be held that Weimar's rights would, in such case, have been cut off, and vested in the purchaser, there is much reason for holding that, under our registry laws, which make an assignee of a mortgage a purchaser, an unrecorded assignment from Weimar could not be set up afterwards against the purchaser's title. Suppose *Downer* had purchased from the mortgagor, and Weimar had released the first mortgage, *Downer* having no notice of its assignment. Would he not then be entitled to protection, as a *bona fide* purchaser, under the registry laws? And if so, would he not be equally entitled to it, if he purchased under a judicial proceeding against Weimar, which was as competent to divest his interest as a release executed by him? These questions have suggested themselves, in our consideration of this case, but as we do not find it necessary to determine them, we shall express no opinion in regard to them. The case of *Wilson vs. Kimball*, 7 Fost. (N. H.), 300, is a very strong authority in favor of the rights of such an assignee. But whether that conclusion could be sustained under our registry laws, is a matter worthy of serious consideration.

But we are of the opinion that the rights of Weimar would not have been divested by the foreclosure and sale, even if he had still held the first mortgage. His mortgage was a prior incumbrance to the one being foreclosed, and of course the right under it was paramount both to the rights of the mortgagor and to those of the owner of the second mortgage. As such he was not a necessary party to the foreclosure suit on the second. And if made a party, without any allegation contesting his title, he had a right to assume that the proceeding was to be conducted upon the theory that his claim was paramount, and therefore not subject to it. It seems to be established by the authorities that those claiming title adverse to the mortgagor,

June Term, 1860.

STROBE·
v.
DOWNER.

or prior to the mortgage which is foreclosed, even though made parties, are not divested of such adverse or prior rights, by the ordinary clause in foreclosure judgments, barring the defendants and those claiming under them of all right and equity of redemption in the premises. That clause is held to relate only to such interests as are claimed subsequent and subject to the mortgage which is being foreclosed. This question is fully considered in *Lewis vs. Smith*, 5 Seld., 502. And it was there held that a widow was not divested of her right of dower by a mortgage foreclosure to which she was made a party, under the general allegation that she had claimed some interest in the premises, subsequent to the mortgage "*or otherwise.*" We can see no reason for a distinction between that case and the present. The fact that here the claim is of a prior mortgage instead of a dower right, ought not to create one. Both rights are equally paramount to the rights of the mortgagor and of the second mortgagee. Possibly the validity of either claim might be litigated in a foreclosure suit. The court in that case state that their decision does not extend to a case where one claiming a prior right is made a party in such a manner as to put that right in issue, and answers and litigates it. But as in that case there was nothing in the complaint assailing or questioning in any manner the dower right, so here there is nothing impeaching the validity or priority of the first mortgage. What was the first mortgagee called on to defend against? It was stated in the complaint that he claimed an interest, and there was no allegation against its validity which called on him to defend. He had a right to assume that, without answering, his rights were not to be affected by the proceeding. This conclusion is fully sustained by the case of *Williamson vs. Probasco*, 4 Halst. Ch., 571. Assuming here that Weimar still owned the first mortgage, that case is in every respect like this, with one exception. The first mortgagee was there made a party, and his mortgage and its priority were expressly stated in the complaint. The decree, however, as in this case, barred all the parties of all right, &c., in the premises. But it was held that

this had no effect upon the rights of the first mortgagee. The fact that there the priority of the first mortgage was expressly stated in the complaint, does not vary the principle. It only makes its application a little clearer. But there was really nothing more in this complaint tending to impeach or put in issue the prior right of the first mortgagee, than there was in that. Indeed, it is fairly implied from the face of the complaint, that the interest claimed by Weimar was prior and paramount to the second mortgage. A printed blank was used, and after stating that Weimar claimed an interest, the usual clause, that such interest accrued subsequent to the mortgage sought to be foreclosed, is erased. From this it may fairly be assumed, that the interest claimed by him was prior to that mortgage. And certainly it is not alleged to be subsequent. And the general form of referring to the interests of other incumbrancers, which was here adopted, was allowable only with respect to interests accruing subsequent to the mortgage. Rule 83 of the old chancery rules, was like the New York rule on that subject, referred to in *Lewis vs. Smith.* And when the allegation that the interest claimed by Weimar was subsequent to the mortgage was stricken out, it took the case out of the rule allowing that mode of pleading, and required the plaintiff, if he wished to question the right of a prior mortgagee, to make suitable allegations to put it in issue. It would then fall exactly within the following language of Justice DENIO, in *Lewis vs. Smith*: "In the special case of a title to mortgaged premises, and a *bona fide* controversy as to priority between it and the mortgage, the complainant in the foreclosure bill must state the facts upon which the question arises, as he insists they exist, according to the rules of equity pleading which prevailed antecedently to the rule referred to. If he omit to do this, it will be under the pain of being obliged to show, when the decree is relied on collaterally, that the title alleged to be foreclosed was, in fact, subordinate to the mortgage."

We think, therefore, that the rights under the first mortgage would not have been cut off, even though Weimar had

owned it at the time of the foreclosure of the second. And, of course, the rights of the plaintiff were not affected. The judgment is affirmed, with costs.