DAWKINS, J., dissents for the reasons given in State v. Ward, 147 La. 1083, 86 South. 552.

━━━━

(95 South. 389)

No. 25276.

SCHROEDER v. AMALGAMATED ASS'N OF STREET & ELECTRIC RY. EMPLOYEES OF AMERICA. In re SCHROEDER.

(Dec. 29, 1922. Rehearing Denied Jan. 27, 1923.)

*(Syllabus by Editorial Staff.)*

1. Insurance ⬦787—Provision of charter excluding liability for death while on duty as "soldier" did not include person enlisted in navy.

Provision of charter of benefit insurance association excluding liability for death while on duty as a "soldier" did not apply to one enlisted in the navy, especially where the hazardous occupation had nothing to do with his death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Soldier.]

2. Insurance ⬦787—Provision of charter excluding liability for death of soldier not entitled to liberal construction.

Provision of charter of benefit insurance association excluding liability for death or disability caused while on duty as a soldier, being a special exemption from liability written by the association for its own protection, was not entitled to a liberal construction.

3. Insurance ⬦787—Resolution of association held not a construction of charter as excluding liability for death in navy.

A resolution adopted by a convention of a benefit insurance association, whose charter excluded liability for death while on duty as a soldier, providing that members would be placed in good standing upon their return from war service, liability for benefits to be governed by provision of Constitution, that during such service they should be nonbeneficial, did not amount to a construction of the charter as exempting the association from liability for death of a member while enlisted in the navy.

Action by Francis J. Schroeder against the Amalgamated Association of Street & Electric Railway Employees of America. A judgment for plaintiff was reversed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Judgment of the Court of Appeal annulled, and judgment of the Civil District Court reinstated and affirmed.

George J. Untereiner, of New Orleans, for relator.

Wm. H. Byrnes, Jr., of New Orleans, for defendant.

O'NIELL, J. The question presented is whether a clause in the charter of the defendant association, exempting the association from liability for a death benefit for the death "of a member whose death or disability has been caused while on duty as a soldier," is applicable to the case of a member who died while serving in the United States navy. In other words, does the term "soldier," according to the context of the exemption, mean a man enlisted in the navy, as well as a man enlisted in the army?

Plaintiff's brother, Clarence E. Schroeder, while a member of the defendant association, enlisted in the United States Navy and died in the service on the 18th of January, 1918.

His death was caused by appendicitis. It is not disputed that plaintiff is entitled to the so-called death benefit allowed by the association, unless the association is exempt from liability by the provision of the charter reading as follows, viz.:

"No death or disability claim shall be allowed or paid to a member, or any beneficiary of a member, whose death or disability has been caused while on duty as a soldier, volunteer militiaman, policeman, or city fireman."

The civil district court gave judgment in favor of plaintiff, maintaining that the word "soldier" did not mean a person enlisted in the navy. The Court of Appeal reversed the judgment; and the case is before us on a writ of review.

[1, 2] We agree with the judge of the civil district court that the term "soldier" has reference to the army, not the navy. The clause in which the word appears, being a special exemption from liability, written by the association, for its own protection, is not entitled to a liberal construction. To infer that the association intended that the word "soldier" should have a broader meaning than it has in ordinary parlance, or to infer that the association accidentally omitted from the list of hazardous occupations service in the navy, would be mere conjecture on our part. It would not do to base such an inference upon the idea that enlistment in the navy is as hazardous as enlistment in the army, because the hazardous occupation in this case had nothing whatever to do with the man's death. The only ruling that has been cited directly in point is the decision of the Supreme Court of Iowa, in Abrahams v. Bartlet, 18 Iowa, 513, where it was decided that a statute exempting from seizure "any property of any soldiers in the actual military service of the United States" did not exempt the property of a master of a warship in the actual naval service of the United States.

[3] It is argued that the association itself, in a resolution adopted by a convention held in Providence, R. I., in September, 1918, after Clarence E. Schroeder had enlisted in the United States navy, construed the provision of the charter in question as exempting the association from liability for the death of a member while enlisted in the navy. But we do not find it so. The pertinent part of the resolution is as follows, viz.:

"That the International Association shall assume the back per capita and place the members in good standing in respect to death, disability and old age benefits upon their return from war service; liability of the association for said benefits to be governed by that section of the constitution that provides that during said service said members shall be nonbeneficial."

The resolution merely exempted from the payment of per capita dues or taxes the members who were engaged in war service. The expression in the resolution, "liability of the association for said benefits to be governed by that section of the constitution that provides that during said service said members shall be nonbeneficial," was an acknowledgment that there was a liability, except in so far as the association was exempt from liability by the section referred to; that is, except as to soldiers.

It is suggested by one of the judges of the Court of Appeal, in a dissenting opinion, that the judgment of that court is null because, after a rehearing was granted, the decree was reinstated by the concurrence of only two judges, one of whom had not heard the argument on rehearing. We refrain from expressing an opinion on that question, because the relator does not complain of the matter, preferring to have the case disposed of finally.

The judgment of the Court of Appeal is annulled, and the judgment of the civil district court is reinstated and affirmed as the final judgment of this court; the defendant is to pay all costs.