**STEWART TITLE GUARANTY CO.**

v.

**John B. KIEFER, et al.**

**No. CIV.A. 95–348.**

United States District Court,
E.D. Louisiana.

Oct. 8, 1997.

See also, 984 F.Supp. 988.

Harry A. Rosenberg, Brent Bennett Barriere, Thomas Matthew Beh, Phelps, Dunbar, LLP, New Orleans, LA, for Stewart Guaranty Co.

Steven W. Copley, Ernest Enrique Svenson, Martin E. Landrieu, Gordon, Arata, McCollam & Duplantis, LLP, New Orleans, LA, for John Parsons.

Joseph Ernest Friend, Breazeale, Sachse & Wilson, New Orleans, LA, Richard Terrell Simmons, Jr., Michael J. Vondenstein, Hailey, NcNamara, Hall, Larmann & Papale, Metairie, LA, Avery Lea Griffin, Breazeale, Sachse & Wilson, Baton Rouge, LA, for John B. Kiefer.

Michael Hudson Ellis, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, Michael A. Berenson, Sessions & Fishman, New Orleans, LA, Kurt Stephen Blankenship, Blue, Williams, LLP, Metairie, LA, Jan K. Frankowski, Barkley & Thompson, New Orleans, LA, for Ann H. Kiefer.

Walter C. Thompson, Jr., Jan K. Frankowski, Barkley & Thompson, New Orleans, LA, Elise Marie Beauchamp, Law Office of Elise Beauchamp, New Orleans, LA, for Scott Kiefer.

Walter C. Thompson, Jr., Thomas E. Schwab, Barkley & Thompson, New Orleans, LA, for Kiefer & Rudman PLC, Laurence D. Rudman.

Brian C. Bossier, Madison C. Moseley, Blue, Williams, LLP, Metairie, LA, Glenda Moreland Barkate, Glenda M. Barkate, Metairie, LA, Warren Stanley Edelman, Frederick A. Miller & Associates, New Orleans, LA, for Teresa Horgan.

Nancy J. Marshall, William Everard Wright, Jr., Karyn Joy Vigh, Deutsch, Kerri-

gan & Stiles, New Orleans, LA, Daniel Anthony Rees, Christovich & Kearney, New Orleans, LA, for Homestead Ins. Co.

Daniel Anthony Rees, Christovich & Kearney, New Orleans, LA, for Home Ins. Co.

John C. Miller, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for United General Title Ins. Co.

Malcolm J. Peytavin, Martin, Himel, Peytavin & Nobile, LA, for Donald J. Landry.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court is a motion for summary judgment filed by defendant The Home Insurance Company ("The Home"). For the reasons that follow, the motion is DENIED.

**I. BACKGROUND:** The plaintiffs in these consolidated actions, Stewart Title Guaranty Company ("Stewart") and Security Title Guarantee Corporation of Baltimore ("Security"), are both title insurers. Each of them had an underwriting agency agreement with Charter Title, Ltd. ("Charter"), who was authorized to execute title insurance commitments and title insurance on behalf of Security, Stewart, and other title insurers. In addition, Charter's closing attorneys provided virtually all services necessary to close real estate transactions, including title examinations, and receipt and disbursement of sales proceeds, loan proceeds, and escrow funds. Premiums and other closing-funds were to be kept in escrow accounts. Charter filed a bankruptcy petition on January 17, 1995, on which date deficiencies in Charter's escrow accounts amounted to more than $1 million.

Stewart and Security have each sued various employees and attorneys of Charter to recover unpaid premiums as well as losses resulting from the escrow shortages. In addition, both have asserted claims under the Louisiana Direct Action Statute [1] against various insurers, including The Home, who allegedly have issued liability policies that covering their losses.

**II. ANALYSIS:** Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

The Professional Liability Insurance Policy, policy number LPL F874350–2, issued by The Home to the law firm of Kiefer & Rudman, PLC (the "Home Policy") is a "claims made" policy affording coverage for "sums that the Insured shall become legally obligated to pay as damages as a result of [claims] caused by any act, error or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer or notary public." See The Home's Exhibit A at § B(I).

■ Under Louisiana law, an insurance contract must "be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La.Rev.Stat. Ann. § 22:654 (West 1995). In addition, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." Louisiana Insurance Guaranty Ass'n v. Interstate Fire & Casualty Co., 630 So.2d 759, 763 (La.1994). It "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Id. The extent of coverage is determined by the "parties' intent as reflected by the words in the policy." Id. Words in the policy " 'are to be understood in their common and usual significance,' focusing on 'general and popular use.' " Jensen v. Snellings, 841 F.2d 600, 617 (5th Cir.1988) (quoting Hebert v. First American Ins. Co., 461 So.2d 1141, 1143 (La. Ct.App. 5th Cir.1984)).

■ "Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be

---

1. La.Rev.Stat. Ann. § 22:655 (West 1995).

construed separately at the expense of disregarding other policy provisions." *Id.* "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ.Code Ann. art. 2049 (West 1987). "Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include." La. Civ.Code Ann. art. 2049 (West 1987).

 Finally, "[i]f after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter." *Louisiana Insurance,* 630 So.2d at 764. This rule of "[s]trict construction against the insurer is especially appropriate when interpreting exclusionary clauses in insurance policies." *Jensen,* 841 F.2d at 615; *see also Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp.,* 933 F.2d 337, 340 (5th Cir.1991). Thus, "if an exclusion gives rise to multiple interpretations, 'the one affording coverage to the insured will be adopted.'" *Littleton, supra,* 933 F.2d at 340 (quoting *Stewart v. Louisiana Farm Bureau Mutual Ins. Co.,* 420 So.2d 1217 (La.Ct.App.1982)). Moreover, "'the insurer has the burden of proving the applicability of a coverage exclusion.'" *Farrell Lines, Inc. v. Insurance Co. of North America,* 789 F.2d 300, 306 (5th Cir.1986) (quoting *Hampton v. Lincoln Nat'l Life Ins. Co.,* 445 So.2d 110, 113 (La.Ct.App. 1984)). "Once coverage has been extended, it should be withdrawn only when exclusion is established with certainty." *Ogima v. Rodriguez,* 799 F.Supp. 626, 630 (M.D.La. 1992).

 The Home seeks summary judgment dismissing the claims against it in these matters on grounds that they are excluded under the "Specific Entities Exclusion" because all of the claims against The Home in these matters arise out of work performed by Kiefer & Rudman attorneys for Charter Title. The "Specific Entities Exclusion" provides:

In consideration of the payment of the premium, it is hereby understood and agreed that this policy does not apply to

any claim based upon or arising out of any services provided to, for or on behalf of the following entities:

1. Charter Title Ltd., Metairie, Louisiana

The Home's Exhibit A. In addition, The Home argues that for the same reason the claims against it are also excluded under Exclusion (h), which provides:

This policy does not apply:

. . .

(h) to any claim based upon or arising out of the work performed by the Insured, with or without compensation, with respect to any corporation, fund, trust, association, partnership, limited partnership, business enterprise or other venture, be it charitable or otherwise, of any kind or nature in which any Insured has any pecuniary or beneficial interest, irrespective of whether or not an attorney-client relationship exists, unless such entity is named in the Declarations. For purposes of this policy, ownership or shares in a corporation shall not be considered a "pecuniary or beneficial interest" unless one Named Insured or members of the immediate family of the Named Insured own(s) 10% of the issued and outstanding shares of such corporation;

The Home's Exhibit A at § C(I)(h). According to The Home, exclusion (h) applies because Charter Title was owned by J.B. Kiefer.

Neither exclusion entitles The Home to dismissal pursuant to Rule 56. The "Specific Entities Exclusion" cannot carry the summary judgment load because it applies only to claims based upon or arising out of services "provided to, for or on behalf of" Charter Title. Although The Home offers a plethora of deposition testimony suggesting that the closing attorneys considered themselves to be working, at least in part, "for Charter Title," [2] opponents to the motion have offered evidence tending to show that at the Charter Title closings the attorneys were providing services to and/or on behalf of either the buyer or seller in the transaction, not on

**2.** *See* The Home's Exhibits B–F.

behalf of Charter Title.[3] Based upon this opposing evidence, a jury could find that the Kiefer & Rudman attorneys did not provide their closing services "to, for or on behalf of" Charter Title.[4]

Exclusion (h) fares no better. Although exclusion (h) employs the more expansive phrase "with respect to," which (unlike the "to, for or on behalf of" language of the Specific Entities Exclusion) would overcome the evidence proffered to show that the closing attorneys were providing services for persons other than Charter Title, the argument stumbles on the definition of "pecuniary or beneficial interest." Where shares in a corporation are at issue, exclusion (h) specifically restricts application of the exclusion to situations where "one Named Insured or members of the immediate family of the Named Insured own(s) 10% of the issued and outstanding shares of such corporation." In the Home Policy, the declaration and the endorsements specifically identify the "Named Insured" as Kiefer & Rudman, PLC, while the individual attorneys are referred to as "Additional Individual Named Insureds." Nothing in the policy suggests that the terms are interchangeable. *See* The Home's Exhibit A. Accordingly, taking the policy as a whole, it is clear that J.B. Kiefer is not the "Named Insured" for purposes of exclusion (h). His ownership of Charter Title, therefore, is not a "pecuniary or beneficial interest" of a corporation within the meaning of exclusion (h).

Accordingly, the Court finds that genuine issues of material fact exist which preclude determination as a matter of law that coverage is excluded under the Home Policy.

Therefore, for the foregoing reasons, IT IS ORDERED that The Home's motion for summary judgment is HEREBY DENIED.

---

3. *See* Affidavit of T.W. Clowdus and attachments, Exhibit to United General's Memorandum in Opposition.

4. The case of *Green v. Traylor*, No. 90–3247, 1992 WL 91975 (E.D.La. Apr.15, 1992), does not aid

The Home in this regard, for unlike the "to, for or on behalf of" of the Specific Entities Exclusion, the exclusion relied upon by the Court in *Green* was the more expansive "with respect to" language contained in § C(I)(h).